You may proceed. May it please the court. The district court here abused its discretion by not exercising its authority in the settlement agreement to review a clear misinterpretation of the Deepwater Horizon Economic Class Action Settlement. Specifically, the settlement program, the court supervised settlement program, was not has taken the position and made the interpretation that the class definition, which states, all entities doing business or operating in the Gulf Coast area that own or lease real property in the Gulf Coast area at any time between April 20, 2010 to April 16, 2012, requires a preliminary showing that the claimant earned revenue in 2010. Well, this is a mystery to me because it appears that BP agrees with your client that Section 1.2 does not require showing of revenue earned in 2010. So if indeed that were the dispute and the underlying panel had said you must have revenue in 2010, then that would be the big issue that would be beyond the facts of the case that would merit it. But it appears that BP has already agreed that 1.2 does not require a revenue in 2010. And it also appears that the case did not, was not decided on the basis that revenue was not earned in 2010. So I don't understand why that's the pivotal point of your argument. Because the appeals panel did not deny the claim on the basis that it did not demonstrate revenues earned in 2010. They have relied on the fact that the last tenant lease ended in 2008 and there was absence of a tenant for a long period of time. So it's not that just 2010 revenue. It's since 2008 there was no tenant. So that's different. Those are two different things. Yes, Your Honor. There was two questions. So the first question is BP might agree that the language doing business or operating doesn't require revenue in 2010. Everybody agrees that. Well, Your Honor, I would disagree that the settlement program does not agree that that is correct. And the reason why we know that is because there are a series of internal appeals panel decisions that deal with this exact issue. And the appellant has directed the court to at least 13 that deal with real estate issues where it came down to the fact that in 2010 there was no lease. By extension, there's no revenue. Therefore, the claimant was not doing business or operating. That's the reason why the settlement program denied the claim. Then it goes to an appeals panel. Maybe there's a – I need to step back and explain the internal appeals program. We've had a bunch of these, but you can if you want. Yes, Your Honor. I just want to make the point that it's not a single person or a single appeal panel that rules on each one of these. And the internal appeals panel decisions show that there is a split among how the certain appeals panelists take the issue of whether or not there is 2010 revenue. And when it comes to a claimant that its sole purpose is to lease commercial property, the fact that there is no lease is the same – it's one and the same as having no revenue. So those issues are – it's not – I would argue that it's not two separate facts. It's the same issue. Well, one is since 2008. The court did not say, well, because you can't demonstrate revenue in 2010, your client loses. The court said you hadn't had a tenant since 2008. So there's – there's part of 2008 and there's also 2009. So there was no business of renting going on. So it's not that you're some startup business and it takes a while to actually earn some revenue or something like that. It's that there was no business going on since mid-2008. Your Honor, I would disagree that that's what the appeals panel said in this case. What it said was that there was no tenant since 2008, and we can see that. There was no tenant. What it said is because there was no lease and no tenant since then, the claim could not be calculated under the settlement agreement's calculation methodology, which is Exhibit 4C. The problem with that reasoning and that interpretation is Exhibit 4C has no express threshold for revenue that a claimant must have in 2010. What the settlement program did not do here and what the appeals panel did not do is consider what is called a totality of circumstances. That is a phrase that is used for startup-type businesses to determine when they commenced operations. I want to back up for a minute, though, because I thought your argument was that they look solely at 2010, and then based solely on a lack of revenue in 2010, they automatically reject those claims. Yes, Your Honor. That's your contention?  Except that in this case, though, we had 2008 and 2009. We had a lease that ended in 2008. You're saying despite the fact that there was a lack of revenue at least for part of 2008 and then 2009, which is in the record, you're saying that they didn't consider that, that they looked solely at 2010 and rejected the claim. Yes, Judge. That's what I'm saying. That is what the settlement program's interpretation of the class definition, that it requires showing revenue in 2010. And you're saying that's a violation of the settlement agreement to kick them out solely on that basis? Correct. And so I think I understand the argument, but what concerns me about that is there was evidence in this case with regard to 2008 and 2009 and the lack of revenue. That's one thing. And then you have to have, under the terms of the settlement agreement, some benchmarks for determining what the loss is, and those benchmarks are based on the history. Is that right? Correct, Judge. I will address the first question on that, which basically comes down to causation. You didn't have any revenue in 2008 or 2009, so it would infer that you weren't doing business. The problem with that is that under the settlement agreement, this particular claimant is defined as being part of economic loss zone A. It's in Destin, Florida. That's the most preferential zone, and therefore, under the terms of the settlement agreement's Exhibit 4B, they don't have to provide any evidence that the spill caused their loss. If there is a loss that can be calculated under Exhibit 4C, which is the calculation methodology, that loss is presumed to be a result of the spill. So that was the first question. The second question is the benchmark period can be – you can compare 2009 to 2010. You can compare the average of 2008 and 2009 to 2010, or you can compare the average of 2007, 2008, and 2009 to 2010. So here there was enough history that this could have been calculated under Exhibit 4C because there was income and expenses in 2007. There was income and expenses in 2008. There was expenses in 2009, and there was expenses in 2010. And furthermore, with respect to the real estate claims, here there's evidence that it maintained the property as a normal – up to the point of the oil spill. There wasn't any. Is that right? There was no revenue from April – I'm sorry, September 2009 for the spill. Correct. All right. And you're saying it's inappropriate to consider that and use that to project that there wasn't any loss as a result of the spill. You're saying that that's presumed. If you existed in 2008 or 2007, you're entitled to some payment just by virtue of the fact that you were in business. Correct, Your Honor. As long as you remained in business under the terms of the settlement agreement, you had to remain in operation through the end of 2011. But you weren't in business because you weren't trying to get tenants. Did you let – not you. The client let the lease arrangement – I mean, the broker arrangement lapse in 2009. So on the facts of your client's case, the appeals panel could have determined that you would lose, apart from whether there's some blanket presumption. And I do want to ask you another question about the blanket presumption. You say that this is what the appeals panels are doing, but you pointed out correctly that there are multiple appeals panels. Indeed, at least I think in a case that you pointed us to, in fact, the court specifically said you could recover once if you had been – even if you didn't get any particular revenue that year. So the appeal panel reversed, concluding it is irrelevant that the claimant did not have an active lease at the time of the spill because the facility was available for rent. So we have one panel that did say it was irrelevant about whether you have revenue in 2010. And indeed, another one says because the facility was rented or available for rent and incurring expenses, it was operating and doing business. There are appeals panels finding the opposite. So I'm not sure that all the appeals panels are applying this rule incorrectly in violation of the settlement agreement. In fact, you pointed us to ones yourself that did it the right way, that you seek us to have do it. Correct, Your Honor. And that's my point is that I think at this point we have directed the court to somewhere in the neighborhood of 20 or 21 different appeals panelists that have addressed whether or not what it means to be doing business or operating. And by my count, I believe 16 say that the absence of revenue in 2010 is just a factor. Right. It's not dispositive. Correct, Your Honor. Whereas the other ones, such as this one, the appeals panels here have used that as a reason to deny the claim. Well, it's a factor. I don't, but the problem with your case is that the court had more than just that factor. And the other factors are bad for you too. If I could just address something that you mentioned earlier about letting the broker lease or the broker agreement lapse. The record had ample communications all the way leading up to the spill between the broker and my client trying to show the property to find new tenants. There was communications in January of 2010 where the broker was saying we need to find a creative way. Would you be willing to divide the building in half? There are communications in March 12th and March 23rd where it indicates that prospective tenants were being showed the property who were interested. There's a communication on April 19th. I agree. The evidence is mixed. The evidence is mixed on the point. But the decision was not made on just the point that there was no revenue in 2010. There is mixed evidence on these other factors from which the appeals panel could choose to find your evidence is more persuasive or BP's evidence is more persuasive. But there's not, this record does not reflect that no revenue in 2010 was the only factor used. So that's the problem with this case. So help me. Well, Judge, I would suggest that the appeals panelist that wrote the decision in this case says the record reflects the claimant's last tenant ended in April or August of 2008. The record further reflects the claimant did not report any rental income in all of 2010. And as I've mentioned, when you're dealing with commercial real estate. What about 2009? Can you tell me that there was revenue from the rental of this property in 2009? No, Your Honor, there was no revenue in 2009. What I'm saying is when you're dealing with commercial real estate claims, the absence of a lease is the same as no revenue. It's not like a T-shirt sale, a shop in Destin that the business goes down after the spill and so instead of doing $15,000 a month, they do two. Here you either have a tenant or you don't. And some of the appeals panel decisions that we have cited to show that. But the main issue here is that all of those appeals panel decisions show that this is an interpretation issue with the settlement program. And as part of the handling of these claims in a uniform way, a claimant should not be forced to rely on the luck of the draw on which appeals panelist it receives. Well, it seems that the rule is that it is a factor that can be considered, but it is not a loan dispositive. And I agree that's what the rule should be, but the settlement program uses it as a dispositive factor. I have not – have you shown me a case where it was used as a dispositive factor? If you say this case, we have a disagreement on that. So show what case says it is the dispositive factor rather than just some factor. Judge, I will read to you one of the appeals panelist decisions that we submitted. It was 2016-4-366, and the language is, an award for this facility was denied on the grounds that because the facility did not generate revenue for all of 2010, the facility was not doing business at the time of the spill and thus not a member of the economic class. Okay. So that's an example of one that just made a blanket rule. Yes, Your Honor, and there are others that we've discussed in our papers. You've submitted a bunch of new ones in the past day, so I'm just trying to – okay. Yes, Your Honor. Okay. Is there any further questions? Thank you. Good morning, Your Honor. So this is an unusual appeal. I don't think I've ever seen an appeal where we're in such hostile agreement about what the law is. BP does not disagree with the entire opening brief, at least at the legal discussion, as to what we're looking for here. We're looking at a totality of the evidence or a totality of the circumstances test. And my friend here just called his attention to Appeal Panel 4366 – or 4 – let me get the number exactly here – 436. And I would have the court – I was going to leave with that myself. I would have the court look at 436 and for the analysis of the appeal panel. The appeal panel, which, of course, is what the court is – the appeal panel makes its decision, and then that goes for discretionary review to the district court. And the appeal panel – not the claims administrator. Let's leave the claims administrator aside. The appeal panel is what we care about, and here they synthesize the law. And as they synthesize the decisions of the various appeal panels, I say exactly right. It is the case that you look at the totality of the circumstances. It seems to me a very important one, looking at the decisions that they cite, is were they advertising the property? If they're not advertising the property, well, that's a pretty strong indication that a real estate company isn't in business. So they're not, in fact, even advertising real estate. So here I say look at 436. That's – the analysis section I think is the correct statement of the law. This is BP's understanding of the law. Here the facts simply don't support them. So we're in, again, an unusual circumstance. I've not seen it before where I agree on the law, and our brief is trying to figure out what they're going to say on reply once we say we agree. It's kind of an ambush a little bit as we try to figure out what they're going to say because we don't disagree with them about the law. And then don't we have a layer for this case as to whether the district court abused its discretion as to whether or not there's some big issue as opposed to whether or not the court – the panel got the decision right in this case? Correct, exactly right. The standard of review here is, of course, abuse of discretion. And it seems to me if everybody agrees about the law, then by definition we have a fact-bound dispute. They don't even raise the fact question, but leave that aside. And one more point on that so I don't forget it. My friend says they point to 20 or 21 appeals panel decisions, and they say there's a split and there's a majority view and a minority view. And this kind of theory all kind of emerges in the reply brief after we didn't even get a chance to respond. But I would have the court look at what they filed to the district court. The district court – they don't say anything about the majority view and minority view, nor do they point the district court to all of these different decisions. They have one little footnote where they point to a couple. And from that, we're supposed – the district court is supposed to have abused its discretion by not recognizing this massive split in the appeal panel decisions, and thus it should have come in. This is all after the fact. This is all post hoc. Do you grant, Mr. Nielsen, that you could – that the appeals panel could have taken the evidence of the communications with the broker and said, well, it's almost like listing the property? The appeals panel could have done something different with this claim, with these kind of mixed bag of facts. Yes. I mean I think it would have been within the range of reasonableness for them to have done so. I think we would have objected, and here's why. The lease latched in 2009, and they say, yeah, but the person kept coming back to us. Well, it often is the case where you'll see the traveling salesman will knock on your door. That person is doing a lot of business. They're trying to do something. The other person who is being contacted isn't necessarily doing business at all. So I think we would have opposed that. I understand why somebody could have reached that conclusion, but that's really not how they present their case. They present their case as if there's this massive legal dispute, and that just isn't so. Is it helpful if we were to resolve the questions that are properly before the court to note the agreement on what the standard is in the opinion? And say what the standard is as we understand both parties agree on the standards, such and such. Well, I think to be fair, I think this court has already given us the standard. It goes back in one of the early of these Deepwater Horizon appeals. They construe the language doing business or operating. They say undertaking commercial activities or something to that effect. I think that's a correct statement of the law, but what do you do with that? Well, of course you look at the totality of the circumstances. You say were they advertising? Well, here they weren't. Did they have any revenue? Well, that's pretty strong evidence. Here they don't. Did they have a brokerage contract? Well, here they did, and then they don't during the relevant time period. So you'd say, well, this is all a lot of evidence on totality of circumstances that cuts the other way. And the best they can point to are these email exchanges in March and April 2010. And again, I would call the court's attention to record site 747. They're being asked questions, and there's no evidence at all that they're even responding to those questions. Well, it's hard for me to see how you're doing business if you're really doing business, if you're a real estate company, and people are saying, hey, do you have an answer for this? And there's just silence. And then they come back and they say, interestingly, after several rounds of being rejected on the evidence, they say, oh, now this is our last hope. Well, I just don't think that's a – it's not fair to the appeal panel, and it's certainly not fair to the district court. And then to turn around and say to this court, we've got all of these opinions which just keep coming in. They just keep citing them, and none of them were – or very few of them were cited to the district court, and then say the district court abuses discretion. That doesn't make a lot of sense to me. And, by the way, I might call the court's attention to a recent opinion of this court, a published opinion. If we're going to be throwing in new cases, this is from – Could you give this to opposing counsel before the argument today? I have not, Your Honor. I didn't expect that this is where the argument was going to go. But it is a published opinion of this court from January 25th, the Alabama radiologist case. And there this court said, as to the standard of abuse of discretion, we don't need to discern whether or not the appeal panel was correct. We just have to appeal to confirm that it's within the range of – now I'm paraphrasing. Correct is a quote. Paraphrase is within the range of reasonableness, and that has to be the case. Otherwise, discretionary review is let's decide the merits. And if we disagree with the district court on the merits, thus it abuses discretion. Well, at that point, you've defeated discretionary review. There's no such thing as discretionary review if the question is what is the resolution on the merits. Mr. Nielsen, before you leave today, give opposing counsel the side. Opposing counsel by Friday at noon has a right to file a 28-J on that case. I'm not opening up for 12 more 28-Js. You've used the process quite a bit already. But you can on this case that you didn't know the citation. Sure. Happy to do it. It's still on the Westlaw site right now. It's 2017 Westlaw 365495, but I will give it to counsel. Thank you. But it's also, I mean, just again the same thing that was said in Holmes Motors and some of the other decisions of this court, where the question for the district court isn't is this particular case right or wrong, but instead is there a pressing question that the district court has to use as discretion. Otherwise, of course, the district court would be flooded with these. In a word, this court is flooded with these. Imagine the district court's docket is much, much higher. And if it was effectively a right of mandatory review, well, then the number would be much, much higher still. Well, the district court is pretty flooded as it is, isn't it? Correct. If we're getting these every single time we sit, we have two or three of these. Correct. And that's with discretionary review. That's the reason when we crafted this settlement. It's not by accident we said this is discretionary review. And the district court then signed, I agree this is fair. We appeal. It goes up to this court. This court says it's fair. Well, the district court did not sentence himself to perpetuity of resolving settlement claims. It's not humanly possible for one thing, and it's not fair to the other people who are trying to get their settlements. If all of the analysis is dedicated to ones like this, which are really fact-bound cases, well, that means when you really do have a real conflict in the appeals panels, well, that case is going to get bumped off two, three years down the road, and you're going to have people waiting to get their payment. That's why the settlement was set up the way that it was. And remember, of course, this is just a class settlement. We're not saying if you have valid claims and the settlement says you're not a class member, well, that means, oh, I guess you're out of luck. No, it's just like any other class settlement. We're saying that your particular claims are either resolved or they're not by the settlement. Well, that's no different than if we just talk to an individual member of the class and say, hey, you're raising an appeal, but we're going to settle this, and the case just goes away. That doesn't affect the rights of anybody else. So you see this sometimes in these appeals, the idea that if there's no relief, well, then there's no relief. No, that's not – all this means is if you're not a member of the class, well, then you're not a member of the class settlement, but that's no different – you are no different than you were in the status quo ante. So I would – again, I would call the court's attention to that. And let's see if there's anything else that I wanted to raise here. I guess I talked briefly about their economic zone A argument, which, of course, if you're in economic zone A, the causation standards are relaxed. Agreed. That's plain from the case of the settlement. But the question is are you a member of the class at all? They skipped the threshold question, which is are you a class member, and that turns on the doing business requirement. And we know for a fact that the business requirement – doing business requirement is more than just passively holding property. And we know that because if you look at the text of section 1, 1.2 introduces the section and it says doing business and it has the four subparts, and subpart 4 is holding property. So if holding property was by itself sufficient, you just read out doing business from the text of 1.2. So we know that can't possibly be correct. So the question is what more do you have to show? One of their pieces of evidence that they talk about is all of their expenses of owning the property. But anyone who owns property has to pay property taxes and the like, so that can't be enough. If that's the case, again, you just written out doing business from the settlement. So I don't think the zone A argument holds water either. So we're stuck with a fact-bound decision. I think the evidence is pretty strongly on our side. And a minimum, the district court wouldn't abuse its discretion by saying I'm not wading into this. There isn't the legal error that you're claiming. That's sufficient. I have other fish to fry if there are no further questions. Thank you. We have your argument, counsel. Mr. McCarthy, you saved time for argument. I mean for rebuttal. Excuse me. Briefly, we do care what the claims administrator does. We don't think that a claimant in a settlement program that's supposed to be treated uniformly should have to rely on which claims appeal panelist it gets. So we do care what the claims administrator does. Despite what BP might suggest, the claimant, I think there's ample evidence when you read those appeals panel decisions that the claims administrator is taking the position that when there's no revenue, you're not doing business. And I agree that in some cases, as I presented to the court under these appeals panels, they do say no, we need to look at the totality of the circumstances. But that doesn't always happen. And it should. That analysis should always happen. Recently, the district court looked at a startup business. Under the definition of a startup business, they had to have commenced operations as of April 20th. And with respect to real estate companies, the district court took the position that to prove that you're operating at that point is whether or not the property is rental ready. And here, there is no dispute that the property was rental ready. It existed. It had a tenant before the spill. He maintained the property. There's evidence of that. He was trying to get a tenant. You're telling me that, but that tenant left in 08, right? Yes, Your Honor. And the spill was 2010. Correct. And you had a lease with that tenant, the one you had up into 08. You had a lease with that tenant. Yes, Your Honor. And you knew when that lease was expiring. Correct. And the planner plans to have another tenant at the expiration of the lease. Sure. And, Your Honor, there was also some extenuating circumstances with the overall economy in 2008 and 2009, and then with the spill, further devastation, specifically the Gulf Coast economy. So I would suggest that there were some extenuating circumstances. Is there any evidence in this record that your client either marketed the property itself or utilized a broker to market the property during 2009 when there was no tenant? Your Honor, there – oh, in 2009? Yes. Yes, Your Honor, there was a broker. There was a – that's when they hired the broker. Once the broker left, was it September or something? Was it – when was – Your Honor, I would say that the broker never left. The agreement might have – the contract might have been an exclusive right to lease the property through September of 2009, but the broker continued to make efforts to lease the property. Is there any – is there any evidence in the record that your client responded to the broker's inquiry so that it could begin to try to lease the property? Sure, Your Honor. There is – I can throw out a couple of record sites. Record site 1554 is an email where they discuss in January of 2010 how to be creative to secure a tenant. Right, but that's to your client from the broker, right? Correct. But at the top of that document, you'll see a response from my client that says, yes, I'm open to all of those. Let's get together and talk over the details. Is there any evidence that they did? That they spoke? No, but there's further communications in March and April where they said, hey, the broker – this is 1551. The broker said, just wanted to let you know we have had a few showings lately and have one on Monday. Client responded the same day. Thank you, Craig. Keep me posted. So he's showing this property. Correct. And then there is a doc or a communication on March 23rd suggesting we should be getting a proposal on this property this week. Client responded on the same day. Great. Look forward to seeing it. Record document 1563, April 1st, from the broker to my client. Our prospective tenant is still interest. They wanted me to ask you what the average power bill has been. And they wanted – I'll paraphrase because it's a little confusing, but they wanted to divide the property up. And that one the client forwarded to himself, but he didn't respond directly. But later on in April, on April 19th, my client wrote to the broker, Craig, just checking to see if he got anywhere with the folks looking at the office. Broker responded. Yes, they're still in the process of getting board approval. Sorry, it has taken longer than expected. We'll keep you updated. And, again, that was on April 19th, the day before the spill. So if I forgot to say, that's 1561 in the record. Thank you. Thank you, Your Honors. Thank you. We have your argument. Thank you. This concludes the arguments for today. We will reconvene tomorrow at 9 a.m. Thank you.